The opinion of the court was delivered by
A.A. RODRÍGUEZ, P.J.A.D.
In these back-to-back appeals, consolidated for purposes of this opinion, we consider various facial challenges to the constitutionality of N.J.S.A. 54:10A-6, a subsection of the Corporation Business Tax Act (CBT), N.J.S.A. 54:10A-1 to -41, known as the “Throwout Rule.” We affirm and hold that the Throwout Rule is facially constitutional in that it does not offend the Due Process, Commerce, or Supremacy Clauses of the U.S. Constitution.
Plaintiff Whirlpool Properties, Inc. (Whirlpool), a subsidiary of Whirlpool Corp., is a Michigan corporation with its principal place of business in that state. Plaintiff Pfizer, Inc. (Pfizer), a pharmaceutical company, is incorporated in Delaware with its principal place of business in New York. This dispute commenced when the Director of the Division of Taxation (Director) assessed a deficiency against Pfizer for 2003 of $705,521.50 and a deficiency against Whirlpool for 1996 through 2003 totaling $24,883,399.24. Pfizer *525 and Whirlpool filed actions to challenge the constitutionality of the Throwout Rule, N.J.S.A. 54:10A-6, which the Director had used in calculating the deficiencies.[1] Both plaintiffs moved for partial summary judgment, arguing the Throwout Rule is facially unconstitutional. The Director cross-moved for partial summary judgment on the same question. All parties consented to a joint hearing.
The Tax Court denied plaintiffs’ motions and granted the Director’s cross-motions. Pfizer, Inc. v. Dir., Div. of Tax’n, 24 N.J.Tax 116 (Tax 2008). The Tax Court found that the Throwout Rule facially satisfied the requirements of the Due Process, Commerce, and Supremacy Clauses of the U.S. Constitution on the grounds that it would operate constitutionally in some instances and that another tax statute, N.J.S.A. 54:10A-8, permitted the Director to give discretionary relief whenever the Throwout Rule did not operate constitutionally.
We denied plaintiffs’ motions for leave to file interlocutory appeals. However, the Supreme Court granted the motions and summarily remanded to the Appellate Division for consideration on the merits. Pfizer, Inc. v. Dir., Div. of Tax’n, 196 N.J. 590, 960 A.2d 388 (2008); Whirlpool Props., Inc. v. Dir, Div. of Tax’n, 196 N.J. 591, 960 A.2d 388 (2008).
The Throwout Rule applies to any corporation that “maintains a regular place of business outside this State other than a statutory office.” N.J.S.A. 54:10A-6. It uses a formula to determine the “allocation factor,” which is the portion of a corporation’s income that is deemed to be taxable for having a sufficient relation to the State. Ibid. The statute averages three elements. The first is the “property fraction.” N.J.S.A. 54:10A-6(A). The second, and the one at issue in these appeals, is the “sales fraction.” N.J.S.A. 54:10A-6(B). The third is the “payroll fraction.” N.J.S.A. 54:10A-6(C).
*526 The numerator of the “sales fraction” is income on the taxpayer’s sales of tangible property shipped to a point within New Jersey, and on its services, rentals, royalties on the use of patents or copyrights, and “other business receipts” (exclusive of dividends) within the State. N.J.S.A. 54:10A-6(B). The denominator is “the total amount of the taxpayer’s receipts” from such activity, “whether within or without the State.” Ibid. The “allocation factor” ultimately is the average of the property fraction, the payroll fraction, and twice the sales fraction. N.J.S.A. 54:10A-6. It is multiplied against the taxpayer’s “entire net income” to yield the taxpayer’s New Jersey taxable income.
In 2002, the Legislature added the “Throwout Rule” to the statutory scheme. L. 2002, c. 40, § 8. It addressed what the Legislature considered the CBT’s failure to address the “nowhere sales” problem, which was that corporations were managing to allocate an increasing proportion of their income to states that did not have a corporate income or franchise tax (“non-taxing states”). S. Budget & Approps. Comm., Statement to S. 1556 (June 27, 2002); A. Budget Comm., Statement to A. 2501 (June 27, 2002). The intent was to apply the CBT to “the full extent permitted under” the U.S. Constitution and federal statutes. Ibid.
The Throwout Rule, under challenge here, excluded the income from the sales fraction’s denominator:
[I]f receipts would be assigned to a state, a possession or territory of the United States or the District of Columbia or to any foreign country in which the taxpayer is not subject to a tax on or measured by profits or income, or business presence or business activity, then the receipts shall be excluded from the denominator of the sales fraction.
[L. 2002, c. 40, § 8.]
Thus, the formula was altered by eliminating from the denominator receipts from non-taxing states. This rendered a larger amount of income taxable by the CBT.
The statute has been amended to eliminate the Throwout Rule after the date of the operative facts in these cases.[2] This decision by the Legislature plays no role in this opinion.
*527 On appeal, Pfizer contends that: (1) “this court should [review] questions of constitutional law de novo giving no deference to the Tax Court’s legal conclusions or the Division of Taxation’s interpretations;” (2) “the Tax Court erred when it applied the wrong standard for determining whether a statute is facially constitutional;” and (3) “the Tax Court erred when it denied plaintiff’s motion for summary judgment and granted defendant’s cross-motion for partial summary judgment.” Whirlpool contends on appeal that “the Tax Court’s decision should be reversed because the Throwout Rule is unconstitutional on its face.”

Facial Challenge Standard of Review

Plaintiffs argue that the Tax Court’s decision applied an incorrect standard of review to the question of facial constitutionality. They contend that the correct standard is whether there was any circumstance in which the statute would have been unconstitutional, and that the Tax Court was wrong in upholding the statute on the basis that it could be constitutionally applied in some circumstances. We disagree.
As a preliminary matter, we owe no deference to a trial court’s legal interpretation or the legal consequences that flow from established facts. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995). Moreover, the Division of Taxation receives no deference on legal issues. American Fire & Cas. Co. v. N.J. Div. of Taxation, 189 N.J. 65, 79, 912 A.2d 126 (2006).
We review a grant or denial of summary judgment de novo, using the same standard that applied in the trial court. Turner v. Wong, 363 N.J.Super. 186, 198-99, 832 A.2d 340 (App.Div.2003). That standard requires summary judgment to be denied if the evidence, “when viewed in the light most favorable to the non-moving party,” would “permit a rational fact finder to resolve the *528 dispute in” that party’s favor. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 536, 666 A.2d 146 (1995) (citation omitted).
Here, the court did not assess the constitutionality of the statutory provision with regard to a factual record. Its determination was purely one of law and we give it no deference in our review. Manalapan Realty, supra, 140 N.J. at 378, 658 A.2d 1230.
It is settled that “[a] taxing statute is not facially unconstitutional if it operates constitutionally in some instances.” Gen. Motors Corp. v. City of Linden, 150 N.J. 522, 532, 696 A.2d 683 (1997). “A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid.” United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697, 707 (1987). The U.S. Supreme Court explained that “[t]he fact that [a statute] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid, since we have not recognized an ‘overbreadth’ doctrine outside the limited context of the First Amendment.” Ibid, (citation omitted). The Supreme Court has followed Salerno in subsequent eases. See, e.g., Sabri v. United States, 541 U.S. 600, 609-10, 124 S.Ct. 1941, 1948-49, 158 L.Ed.2d 891, 901 (2004) (overbreadth challenges generally allowed only for the “specific” and “weighty” reasons that are implicated “in relatively few settings,” including free speech, travel, and abortion); Virginia v. Hicks, 539 U.S. 113, 118, 123 S.Ct. 2191, 2196,156 L.Ed.2d 148,157 (2003) (“The First Amendment doctrine of overbreadth is an exception to our normal rule regarding the standards for facial challenges.”).
We thus conclude that the appropriate standard for facial challenges is the one set in Salerno, supra, 481 U.S. at 745, 107 S.Ct. at 2100, 95 L.Ed.2d at 707. Therefore, the Tax Court applied the correct standard.

The Due Process Clause

Plaintiffs argue that the Tax Court erred by ruling that the Throwout Rule did not facially violate the Due Process Clause.
*529 The Tax Court held that the Throwout Rule was constitutional under both the Due Process and Commerce Clauses because it operated constitutionally in three circumstances. Pfizer, supra, 24 N.J. Tax at 132. The first was the exclusion of income allocable to a non-taxing state when the transaction had an identifiable and constitutionally adequate nexus with New Jersey. Id. at 132-35. Plaintiffs do not contend that a rule expressly limited to reaching such income would be unconstitutional.
The second circumstance was when the Throwout Rule excluded an “insignificant” portion of the taxpayer’s total income and thereby had “no material effect” on the sales fraction, because “the Constitution permits some imprecision in the apportionment of income to a particular State.” Id. at 132,135 (citation omitted). The third was when the property and payroll fractions “substantially temper the impact of the sales fraction on the allocation factor,” because the constitutional assessment is made of the effect of allocation factor as a whole rather than of any one component. Id. at 132,135-36. The court found that in each circumstance, the total New Jersey allocation “would be fairly related to services or values provided by this State” and would be “fairly apportioned.” Id. at 132. In the alternative, the court found that the Throwout Rule did not even amount to a tax because it was only a rule for determining one factor used in the calculation of a taxpayer’s CBT allocation. Id. at 139-40.
As a matter of federal constitutional law, “no person shall ... be deprived of life, liberty, or property, without due process of law[.]” U.S. Const. amend. V. The same prohibition is imposed on the states by Section 1 of the Fourteenth Amendment. The Due Process Clause accordingly requires “some minimal connection” between a state and the taxpayer’s interstate activity, as well as a rational relation between the income attributed to the state and the “values connected with the taxing State.” Moorman Mfg. Co. v. Bair, 437 U.S. 267, 272-73, 98 S.Ct. 2340, 2344, 57 L.Ed.2d 197, 204 (1978) (citations omitted). For that reason, “in order for a state to impose a franchise tax upon a corporation engaged in multi-state business, the tax base must be apportioned or allocated to the taxing state on a reasonable basis so that *530 extraterritorial values will not be taxed.” F.W. Woolworth Co. v. Dir., Div. of Tax’n, 45 N.J. 466, 495, 213 A.2d 1 (1965) (citing Int’l Harvester Co. v. Evatt, 329 U.S. 416, 67 S.Ct. 444, 91 L.Ed. 390 (1947)).
To tax an out-of-state corporation on “an activity, there must be a connection to the activity itself, rather than a connection only to the actor the State seeks to tax.” Allied-Signal, Inc. v. Dir., Div. of Tax’n, 504 U.S. 768, 778, 112 S.Ct. 2251, 2258, 119 L.Ed.2d 533, 546 (1992). The activity providing the connection does not have to be independent of the taxpayer’s out-of-state activities: “The requisite ‘nexus’ is supplied if the corporation avails itself of the ‘substantial privilege of carrying on business’ within the State; and ‘[the] fact that a tax is contingent upon events brought to pass without a state does not destroy the nexus[.]’ ” Mobil Oil Corp. v. Comm’r of Taxes of Vt., 445 U.S. 425, 437, 100 S.Ct. 1223, 1231, 63 L.Ed.2d 510, 520-21 (1980) (quoting Wisconsin v. J.C. Penney Co., 311 U.S. 435, 444-45, 61 S.Ct. 246, 250, 85 L.Ed. 267, 271 (1940)) (alteration in original).
If the activity furnishing the nexus also contributes to the value of the taxpayer’s activities outside the state, the nexus extends to those activities as well. Container Corp. of Am. v. Franchise Tax Bd., 463 U.S. 159, 165-66, 103 S.Ct. 2933, 2940-41, 77 L.Ed.2d 545, 553-54 (1983). For that to occur, there must be “some sharing or exchange of value” between the in-state and out-of-state activities, and the activities must be “linked by common managerial or operational resources” involving more than “the mere flow of funds arising out of a passive investment” or a completely unrelated business. Ibid.
All activities that are part of the taxpayer’s “unitary business,” wherever located, are connected to each other in that manner. Mobil Oil, supra, 445 U.S. at 438-40, 100 S.Ct. at 1232-33, 63 L.Ed.2d at 521-22. Thus, a state having a nexus with any activity of a unitary business may include the income from all such activities in the income base for apportionment. Container Corp., supra, 463 U.S. at 166, 103 S.Ct. at 2940, 77 L.Ed.2d at 553. Accord Shell Oil Co. v. Iowa Dep’t of Revenue, 488 U.S. 19, 24-31, *531 109 S.Ct 278, 281-85, 102 L.Ed,2d 186, 194-99 (1988). By contrast, activities that are separate from the unitary business lack such a connection, so inclusion of the income from them in the base would represent an improper extraterritorial exercise of state power. See MeadWestvaco v. III. Dep’t of Revenue, 553 U.S. 16, 26-29, 128 S.Ct, 1498, 1506-07, 170 L.Ed.2d 404, 414-15 (2008) (state must exclude gain on sale of asset that served only an “investment function”). Accord Allied-Signal, supra, 504 U.S. at 785-88, 112 S.Ct, at 2262-64,119 L.Ed.2d at 550-52.
The requisite “sharing or exchange of value” between the taxpayer’s in-state and out-of-state activities is typically “not capable of precise identification or measurement,” Container Corp., supra, 463 U.S. at 166, 103 S.Ct, at 2940, 77 L.Ed.2d at 554, so apportionment has been accepted as a constitutionally adequate measure of the in-state value generated by an out-of-state company’s unitary business. Trinova Corp. v. Mich. Dep’t of Treasury, 498 U.S. 358, 376-79, 111 S.Ct. 818, 830-32, 112 L.Ed.2d 884, 906-08 (1991).
More specifically, the Supreme Court has recognized “the practical impossibility of a state’s achieving a perfect apportionment of expansive, complex business activities.” Int'l Harvester, supra, 329 U.S. at 422, 67 S.Ct. at 447, 91 L.Ed. at 395. Thus, an apportionment formula need not avoid every possibility of “taxation of some income that did not have its source in the taxing State.” Container Corp., supra, 463 U.S. at 169-70, 103 S.Ct. at 2942, 77 L.Ed.2d at 556 (citation omitted). It need only avoid attributing income to the taxing state “out of all appropriate proportion to the business transacted by the appellant in that State.” Hans Rees’ Sons, Inc. v. North Carolina ex rel. Maxwell, 283 U.S. 123, 135, 51 S.Ct. 385, 389, 75 L.Ed. 879, 908 (1931). Accord Moorman, supra,, 437 U.S. at 274, 98 S.Ct. at 2345, 57 L.Ed.2d at 205; Silent Hoist & Crane v. Dir., Div. of Tax’n, 100 N.J. 1, 10, 494 A.2d 775, cert, denied, 474 U.S. 995, 106 S.Ct. 409, 88 L.Ed.2d 359 (1985).
Plaintiffs do not present authority for the proposition that an allocation formula can ever be facially unconstitutional, much less *532 authority to indicate the exact percentage of disproportion that would have to be the likely result in at least the majority of eases. We conclude that a suitable vehicle for such propositions is unlikely to arise, because the enormous variation among businesses in organization, and in the distribution of their activities among the states, inhibits the prospect of actually demonstrating that a given formula will yield allocations for most out-of-state taxpayers that are unconstitutionally disproportionate.
In summary, although plaintiffs are correct that the application of the Throwout Rule may result in a tax liability, they incorrectly argue that it violated the Due Process Clause by taxing transactions that did not reflect a sufficient degree of in-state business activity. Plaintiffs do not contest that they had a nexus with New Jersey that was independent of their unitary business, and they do not contest that their sales to non-taxing states were part of that business. Those were the only conditions needed for New Jersey to have a constitutionally sufficient nexus to those sales.
Plaintiffs rely on Silent Hoist, supra, 100 N.J. 1, 494 A.2d 775, to support their facial challenge to the Throwback Rule. In Silent Hoist, the Court invalidated the apportionment as applied, and in doing so, placed “great emphasis upon the fact that the receipts fraction must be determined in harmony with the definition of entire net income.” Id. at 22 n. 8, 494 A.2d 775. The Court explained that “the tax base and the receipts fraction are symmetrical,” so “[tjhat which is excluded from the former is excluded from the latter and, conversely, that which is included in the former is also included in the latter.” Ibid, (citation omitted). Contrary to plaintiffs’ assertions, nothing in Silent Hoist states that an absence of symmetry is a facial defect, particularly without a showing of the degree of disproportion that would make an apportionment unconstitutional as applied. See id. at 26, 494 A.2d 775 (remanding to let taxpayer make such an as-applied claim).

The Commerce Clause

Plaintiffs argue that the Tax Court erred by ruling that the Throwout Rule did not facially violate the Commerce Clause. We disagree.
*533 Our Due Process Clause analysis is also applicable here. Congress has the power “[t]o regulate Commerce with foreign Nations, and among the several States[.]” U.S. Const. art. I, § 8, cl. 3. The states may tax interstate commerce because the Commerce Clause does not exempt it from its fair share of state taxes. Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 279, 97 S.Ct. 1076, 1079, 51 L.Ed.2d 326, 331 (1977). A tax is valid under the Commerce Clause if it “is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State.” Ibid.
Complete Auto’s four-part test accommodates the due process requirements of “a ‘minimal connection’ between the interstate activities and the taxing State, and a rational relationship between the income attributed to the State and the intrastate values of the enterprise.” Trinova, supra, 498 U.S. at 373, 111 S.Ct. at 828, 112 L.Ed.2d at 904 (quoting Mobil Oil, supra, 445 U.S. at 436-37, 100 S.Ct. at 1231, 63 L.Ed.2d at 520). However, for Commerce Clause purposes, the nexus requirement reflects “structural concerns about the effects of state regulation on the national economy,” rather than the due process concern that fundamental fairness to the individual requires state power to be exercised only upon “ ‘notice’ or ‘fair warning.’ ” Quill Corp. v. North Dakota, 504 U.S. 298, 312, 112 S.Ct. 1904, 1913, 119 L.Ed.2d 91, 106 (1992).
There is no de minimis threshold for finding a facial discrimination against interstate commerce. Fulton Corp. v. Faulkner, 516 U.S. 325, 334 n. 3, 116 S.Ct. 848, 855 n. 3, 133 L.Ed.2d 796, 807 n. 3 (1996). Accordingly, when a tax is facially discriminatory, the taxpayer does not have to demonstrate that it suffered multiple taxation or other harm. Armco, Inc. v. Hardesty, 467 U.S. 638, 644-45, 104 S.Ct. 2620, 2623-24, 81 L.Ed.2d 540, 546-47 (1984); Tyler Pipe Indus, v. Wash. State Dep’t of Revenue, 483 U.S. 232, 247, 107 S.Ct. 2810, 2820, 97 L.Ed.2d 199, 213-14 (1987).
A tax is facially discriminatory against interstate commerce when it subjects income on sales outside the state to a *534 greater taxation than income on intrastate transactions. See Tyler, supra, 483 U.S. at 240-41, 107 S.Ct. at 2816, 97 L.Ed.2d at 209 (manufacturing tax applied only to companies’ out-of-state sales). It is also facially discriminatory if it taxes interstate commerce to a greater degree than similar in-state commerce. See Fulton, supra, 516 U.S. at 334, 116 S.Ct. at 855, 133 L.Ed.2d at 807 (intangibles tax on residents’ stock holdings, applied in same proportion as issuer derived its income outside the state, facially discriminated against interstate commerce by encouraging residents to buy stock of domestic corporations); Am. Trucking Ass'ns v. Scheiner, 483 U.S. 266, 285-86, 107 S.Ct. 2829, 2840, 97 L.Ed.2d 226, 244 (1987) (highway use tax imposed at flat rate per axle was “plainly discriminatory” because cost per mile of in-state travel was five times higher for out-of-state trucking companies than for local companies).
Applying these principles, we conclude that the Throwout Rule is not facially unconstitutional under the Commerce Clause. The rule does not expose any income to multiple taxation, as discussed in our Due Process Clause analysis, and it does not tax in-state and out-of-state sales in a discriminatory manner. Thus, although the Throwout Rule might reduce or eliminate the relative financial benefit to the taxpayer of sales in non-taxing states compared to sales in taxing states, it does not make them less remunerative. It avoids the “forbidden impact on interstate commerce” of “pressuring” out-of-state corporations to increase their business activity here at the expense of activity elsewhere. See id. at 286-87, 107 S.Ct. at 2842, 97 L.Ed.2d at 245.
The Throwout Rule also does not impose any standards on business activities, whether conducted inside or outside of New Jersey. The purposes of a tax system are rather “to encourage the growth and development of intrastate commerce and industry,” while at the same time serving the “practical need to increase revenues.” See Trinova, supra, 498 U.S. at 385-86, 111 S.Ct. at 835, 112 L.Ed.2d at 912. The only constraint in devising a tax system is that “no State may discriminatorily tax the products manufactured or the business operations performed in any other State,” Boston Stock Exch. v. State Tax Comm’n., 429 U.S. 318, *535 336-37, 97 S.Ct. 599, 610, 50 L.Ed.2d 514, 529 (1977). The Throwout Rule does not facially do so.

The Supremacy Clause

Plaintiffs and amici curiae New Jersey State Chamber of Commerce and New Jersey Business & Industry Association argue that the Tax Court erred by ruling that the Throwout Rule did not facially violate the Supremacy Clause. It relies on a federal statute that prohibits taxation of the income on a sale with no connection to the taxing state beyond the solicitation of the sale. We reject those arguments.
The Supremacy Clause provides that “[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof!,] ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.” U.S. Const. art. VI, cl. 2. The Supremacy Clause is a preemption provision. See R.F. v. Abbott Labs., 162 N.J. 596, 618, 745 A.2d 1174 (2000). Because Congress is not presumed to desire displacement of “the historic police powers of the States,” preemption must be proved by “clear and manifest evidence” of such an intent. Franklin Tower One v. N.M., 157 N.J. 602, 615, 725 A.2d 1104 (1999) (citations omitted).
When federal legislation lacks “explicit pre-emptive language,” a court must consider “field preemption,” which exists when federal statutes regulate a field so pervasively that Congress could not have intended to allow supplementary state regulation. Gade v. Nat'l Solid Wastes Mgmt. Ass’n, 505 U.S. 88, 98, 112 S.Ct. 2374, 2383, 120 L.Ed.2d 73, 84 (1992). Accord R.F. v. Abbott, supra, 162 N.J. at 618, 745 A.2d 1174. A court must also consider “conflict preemption,” in which “compliance with both federal and state law is a physical impossibility,” or in which the state law “stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.” Gade, supra, 505 U.S. at 98, 112 S.Ct. at 2383, 120 L.Ed.2d at 84 (citations omitted).
*536 Here, the Tax Court correctly held that the Throwout Rule does not facially violate the Supremacy Clause. Among other reasons, the court found that the rule does not violate the federal law because there are circumstances in which the rule could operate consistently with federal law. The court noted that the rule could be applied to income from sales of goods that are made from New Jersey and, as to which, New Jersey has a substantial nexus. We agree. Because plaintiffs failed to establish that the rule could not operate constitutionally under any circumstances, the Tax Court correctly found that their facial challenge to the rule on Supremacy Clause grounds failed.
The federal statute expressly addresses only sales for which the sole significant nexus was the purchaser’s residence. No provision suggests a congressional intent to cover other transactions to which the Throwout Rule applies, namely, sales with a stronger nexus, so there is no field preemption. There is also no conflict preemption, because the Throwout Rule can fully accommodate the statute simply by being read as not applying to the subset of sales to non-taxing states that the statute describes. Under the standard of review for facial challenges, the Throwout Rule’s accommodation of the federal statute in at least some instances prevents facial violation of the Supremacy Clause.

Discretionary Relief

Plaintiffs argue that the Tax Court erred by ruling that the availability of discretionary relief kept the Throwout Rule from being facially unconstitutional. They argue that the Director’s statutory authority to provide discretionary relief by using an alternative allocation factor was a remedy only for as-applied challenges, and that it could not save a statute that is facially unconstitutional. We conclude that this argument is moot due to the Throwout Rule’s substantive facial constitutionality.
Accordingly, we reject the constitutional challenges based on the Due Process, Commerce, and Supremacy Clauses of the U.S. Constitution.
Affirmed.

 Federated Brands, Inc., also filed an action, but thereafter withdrew its appeal with prejudice.

 In December 2008, the Legislature repealed the Throwout Rule for tax reporting periods that begin after June 30, 2010. L. 2008, c. 120. The *527 legislative history did not state a reason for the repeal, although it predicted a decrease in tax revenue. S. Budget & Approps. Comm., Statement to A. 2722 (November 13, 2008); A. Approps. Comm., Statement to A. 2722 (October 23, 2008); Fiscal Note to A. 2722 (September 16, 2008); Sponsors’ Statement to A. 2722 (May 19, 2008).